UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LAURI SORRELL, | : | Case No. 1:17-cv-230 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| FORTNEY HOSPITALITY GROUP, INC., | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Doc. 20) AND
TERMINATING THIS CASE IN THIS COURT**

This civil action is before the Court on the motion for summary judgment of Defendant Fortney Hospitality Group, Inc., d/b/a Brothers Bar & Grill ("Defendant" or "Brothers") (Doc. 20) and the parties' responsive memoranda (Docs. 24, 26).

## I. BACKGROUND[1]

Plaintiff Lauri Sorrell is an African-American woman and was over 40 years of age at all times relevant to this action. Plaintiff filed the Complaint on April 6, 2017, in which she alleges that she suffered an adverse employment action at Brothers based on her race in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000(e), and Ohio Revised Code § 4112.02(A), and based on her age in violation of the

---

[1] Pursuant to the Standing Order of the Court, Defendant filed a Statement of Proposed Undisputed Facts. (Doc. 20-2). Plaintiff responded to Defendants Proposed Undisputed Facts. (Doc. 24-1). The Court's statement of facts set forth here incorporates the facts undisputed by the parties and the facts confirmed by the Court upon review of the citations to the evidentiary record provided by the parties.

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Ohio Revised Code § 4112.99.

In July 2011, Plaintiff Lauri Sorrell applied for a job as "host/server" at Brothers in Newport, Kentucky. (Docs. 20-2 and 24-1 at ¶ 3). Plaintiff was initially hired as a host and was later promoted to a server position. (*Id.* at ¶ 4). In August 2013, Plaintiff became a bartender at Brothers. (*Id.* at ¶ 15). During her employment at Brothers, Plaintiff told Brothers that she was available to work Monday morning, Tuesday happy hour, Thursday happy hour and close, and Friday night close. (*Id.* at ¶ 6). Plaintiff describes the "lucrative" shifts at Brothers as Thursday night happy hour and close, and Friday night close. (*Id.* at ¶ 7).

Plaintiff acknowledges that during her employment she received a copy of Brothers' Employee Handbook. (*Id.* at ¶ 8). The Employee Handbook includes an Outside Employment policy permitting employees to hold other jobs, but confirming that "[a]ctivities and conduct away from the job must not compete, conflict with, or compromise the company interests or adversely affect job performance and the ability to fulfill all responsibilities to Brothers." (*Id.* at ¶ 9; Doc. 20-5 at PAGEID # 153).[2]

In early 2013, while still working at Brothers, Plaintiff was hired to work at Yard

---

[2] The Employee Handbook also includes an Equal Employment Opportunity and Non-Discrimination Policy, which instructs "[a]ny employee who feels that he or she has either been discriminated against, or witnessed discrimination must promptly notify their immediate supervisor or any member of Brothers' management. Such reports may be made without fear of reprisal." (Doc. 20-5 at PAGEID # 154). Plaintiff never complained about discrimination during her employment with Brothers. (Docs. 20-2 and 24-1 at ¶ 11).

House. (*Id.* at ¶ 12–13). Plaintiff told Yard House she was available to work mornings every day of the week except Friday. (*Id.* at ¶ 13). Plaintiff worked at both Brothers and Yard House from early 2013 until her employment with Brothers ended. She still works at Yard House. (*Id.* at ¶ 14).

Both Brothers and Yard House use a program called HotSchedules to communicate with employees. Employees use HotSchedules to look for shifts, release shifts, clarify availability, and message. (*Id.* at ¶ 17). Plaintiff used HotSchedules every day for both her job at Yard House and Brothers. If an employee wants to release a shift, the employee would log onto HotSchedules, state that they can no longer work, and release the shift. Another employee could then log into HotSchedules and pick up the shift. (*Id.* at ¶ 21).

Plaintiff claims that younger white employees — Stefanie Reed, Emily Reed, and Frank Faragone — were treated more favorably than she. According to Plaintiffs' reading of the Release/Approval History Report (*see* Doc. 24–2), between January 2015 and June 2015, Stefanie Reed <u>released or swapped</u> 45 shifts, Emily Reed <u>released or swapped</u> 17 shifts. (*See* Doc. 24 at 5). Defendant notes, however, that between January 2015 and June 2015, Stefanie Reed only <u>released</u> 26 shifts, Emily Reed only <u>released</u> 14 shifts, and Frank Faragon only <u>released</u> 4 shifts. (Doc. 24-2). During that same time period, Plaintiff <u>released</u> 59 shifts. (*Id.*). Additionally, during that time period Stefanie Reed picked up 6 shifts, Emily Reed picked up 10 shifts, Frank Faragone picked up 15 shifts, while Plaintiff picked up 3 shifts. (*Id.*)

As of Plaintiff's January 29, 2018 deposition, she had never released a shift at Yard House for any reason. (*Id.* at ¶ 22). During the last year of her employment at Brothers, from January 2015 to August 2015, Plaintiff released 63 shifts on HotSchedules. (Doc. 20-2 at ¶ 23).[3] Plaintiff did not remember whether she had released any shifts at Brothers to work at Yard House. (Docs. 20-2 and 24-1 at ¶ 23). Records provided by Yard House show that Plaintiff worked at Yard House on 42 of the days that she released shifts at Brothers. (*Id.* at ¶ 25). On six of eight occasions where Plaintiff released "lucrative" happy hour bartending shifts at Brothers, she worked at Yard House instead. (*Id.* at ¶ 27). To the best of Defendant's knowledge, Stefanie Reed, Emily Reed, and Frank Faragon never released a shift at Brothers to work at another job. (Doc. 20-3 at ¶¶ 5–8).

Brothers was aware that Plaintiff had a job at Yard House and believed Plaintiff was releasing shifts to work at Yard House, so Defendant reduced the number of shifts it was scheduling Plaintiff for at Brothers. (Doc. 20-2 at ¶ 28).[4] Plaintiff was not surprised that she was not being scheduled as much at Brothers, given the number of shifts she had released. (Docs. 20-2 and 24-1 at ¶ 29). Plaintiff did not contact Brothers at any time

---

[3] Plaintiff denies this fact stating: "Plaintiff sometimes communicated with her manager about coming in, and if her manager told her that business was slow and she did not need to come in, then she did not go to work. This would not be a dropped shift. Moreover, the fact that Plaintiff released a shift did not necessarily mean she did not work that shift (*i.e.* if the manager does not approve the release, or nobody picks up the shift)." (Doc. 24-1).

[4] Plaintiff denies this fact for lack of knowledge. (Doc. 24-1 at ¶ 28). Defendant filed an affidavit of Brothers' general manager to support its statement. (Doc. 20-4, Affidavit of David Ferry).

between October and December of 2015 when she was not being scheduled to work. (*Id.* at ¶ 30). On January 7, 2016, Plaintiff sent a text message to David Ferry, the General Manager at Brothers, asking why she had not been scheduled to work "in over three months." (*Id.* at ¶ 31). Ferry responded to Plaintiff that she had not been scheduled because "you have another job that you make a priority over this one. It's slow right now, and Josh has been scheduling the people who do not have another job and have more of an availability to work with." (*Id.* at ¶ 32). Ferry offered to schedule Plaintiff for serving shifts, instead of bartending, but she stated "Thanks for giving me the option of giving me serving shifts, but I am a Bartender not a Server." (*Id.*). The following day, Josh Simon, then-Assistant Manager of Brothers, wrote Plaintiff: "I have personally not heard from you in over 3 months and the last few times that I did schedule you, you released your shifts. . . . If you want to try and pick up shifts, you are more than welcome to." (*Id.* at ¶ 33). Plaintiff again stated that she is "a bartender not a server and I am not going to take tables." (*Id.* at ¶ 34).

On January 31, 2016, Plaintiff attended an all-staff meeting at which she took and failed a menu test. (Doc. 20-1 at ¶¶ 36–37).[5] Other employees who failed the test were given an opportunity to retake the test upon returning to work and they all passed the test after returning to work. (*Id.* at ¶ 38; Doc. 20-4 at ¶ 5).[6] Plaintiff never returned to work.

Plaintiff was terminated from Defendant's employment system on February 17,

---

[5] Plaintiff states that she was never informed that she failed the menu test. (Doc. 24-1 at ¶ 37).

[6] Plaintiff denies for lack of knowledge.

5

2016. (Doc. 20-4 at ¶ 6). On a "Separation of Employment" form, Ferry wrote that Plaintiff "voluntarily left employment to other job/no availability . . . [Plaintiff] works primarily at Yard House. She failed her server test in January and has not attempted to retake it. She cannot work here until she passes her test." (Doc. 20-5 at PAGEID # 70). After the day of the menu test, Plaintiff did not contact Brothers again until June 2016. (Doc. 20-2 at ¶ 41). Plaintiff alleges that she was terminated from Brothers due to her race and age. Plaintiff does not claim in this lawsuit that anything discriminatory happened to her prior to April 2015.[7] (Docs. 20-2 and 24-1 at ¶ 42). Plaintiff also admits that no one at Brothers ever made inappropriate comments about her race or age. (*Id.* at ¶ 45).

On June 27, 2018, Defendant filed a Motion for Summary Judgment, seeking dismissal of both Plaintiff's race and age discrimination claims. (Doc. 20). This motion has been fully briefed and is ripe for review.

## II.   STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of

---

[7] Plaintiff's Equal Employment Opportunity Commission Charge was filed "on or about May 17, 2016." (Doc. 1 at ¶ 45). Pursuant to 42 U.S.C. § 2000e-5(e), any allegations prior to May 17, 2015 would be time-barred. *See Block v. Meharry Med. Coll.*, 723 F. App'x 273, 277 (6th Cir. 2018) (affirming district court's holding that plaintiff's claim was time-barred).

6

genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

Here, Defendant argues that all of Plaintiff's discrimination claims fail as a matter of law. First, Defendant argues that Plaintiff's disparate treatment claims based on her race and age fail as a matter of law because she cannot establish a *prima facie* showing of discriminatory treatment because she cannot identify similarly situated employees outside of her protected group that were treated more favorably. Second, Defendant argues that, even if Plaintiff could make a *prima facie* case of discrimination, Defendant is entitled to summary judgment because Plaintiff cannot establish that Brothers' legitimate, nondiscriminatory reasons for terminating Plaintiff were pretextual for race and age discrimination.

Plaintiff provides no direct evidence of discrimination by Defendant. In the absence of direct evidence, this Court considers discrimination claims under Title VII, the ADEA, and Ohio discrimination statutes using the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

*See Craig-Wood v. Time Warner N.Y. Cable LLC*, 2012 WL 3929819, at *6 (S.D. Ohio Sep. 10, 2012) (citing *Godfreson v. Hess & Clark, Inc.,* 173 F.3d 365, 371 (6th Cir. 1999) (ADEA); *Michael v. Caterpillar Fin. Servs.,* 496 F.3d 584, 593 (6th Cir. 2007) (Title VII); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (Ohio law)). Plaintiff must establish her *prima facie* case by showing, by a preponderance of the evidence, that: (1) she is a member of a protected group; (2) she experienced an "adverse employment action"; (3) she was qualified for the position she held; and (4) similarly situated employees outside of the protected group were treated more favorably. *See DiCarlo v. Potter*, 358 F.3d 408, 417 (6th Cir. 2004) (citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1159–60 (6th Cir. 1990)); *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).

If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to produce evidence of a non-discriminatory reason for the adverse employment action. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1464 (1990). If Defendant provides a non-discriminatory purpose, the burden shifts to Plaintiff to prove that "the proffered reason was in fact a pretext designed to conceal unlawful discrimination." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). The plaintiff can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Id.*

### A. Plaintiff's *Prima Facie* Case of Discrimination

The parties do not dispute that Plaintiff establishes the first three elements of her *prima facie* case of race and age discrimination because (1) she is African American and was over the age of 40 years old at all times relevant to this dispute, (2) she was terminated from Brothers, and (3) she was generally qualified for her position as bartender. However, Defendant contends that Plaintiff cannot make a *prima facie* showing of discrimination because she cannot show that she has been treated less favorably than other employees outside of her protected groups who are "similarly situated" to her "in all respects." *Mitchell v. Toledo*, 964 F.2d 577, 583 (6th Cir. 1992).

To determine whether individuals are similarly situated, the Sixth Circuit has set forth the following standard: "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* "The nonprotected employee need not be identical in every way in order to be a proper comparator. Instead, the plaintiff must show that the comparator is similarly situated in all relevant respects and has engaged in acts of comparable seriousness." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016).

Here, Plaintiff identified three Brothers employees as comparators whom were outside of her protected classes (race and age) that she claims are similarly situated to her: Stefanie Reed, Emily Reed, and Frank Faragone. Each of these individuals is

Caucasian and younger than Plaintiff. It is undisputed that each of these individuals had the same supervisor and were subject to the same standards as Plaintiff. However, Defendant contends that these three individuals are not adequate comparators to make them "similarly situated" because they did not engage in the same conduct as Plaintiff. The Court agrees that Plaintiff fails to demonstrate by that she was similarly situated to the three comparators as a matter of law.

First, between January 2015 and June 2015, Plaintiff released 59 shifts at Brothers while the comparators released considerably fewer: Stefanie Reed (26 shifts), Emily Reed (14 shifts), Frank Faragone (4 shifts). The large discrepancy between the number of shifts dropped by Plaintiff and the comparators demonstrates that they were not engaging in the same work behavior and therefore were not similarly situated.

Second, Plaintiff dropped shifts at Brothers in order to work at her other job at Yard House, an action that Plaintiff was aware was a violation of the Brothers' Employee Handbook. To the best of Defendant's knowledge, and Plaintiff having provided no evidence to the contrary, the comparators never dropped a Brothers shift to work at another job. (Doc. 20-3 at ¶¶ 5–8).

Third, Plaintiff failed a menu test in January 2016. Plaintiff has offered no evidence that any of the three comparators failed any menu test. Moreover, Defendant filed an affidavit affirming that employees, other than Plaintiff, who did fail the menu test came back to work and retook the test and all eventually passed. Plaintiff never returned to work after failing the menu test and therefore never passed the menu test prior to her

termination. (Doc. 20-4 at ¶¶ 4–6).

For those three reasons, it is evident that Stefanie Reed, Emily Reed, and Frank Faragone were not similarly situated to Plaintiff. Plaintiff engaged in conduct that negatively impacted her work, therefore justifying treatment from Defendant different than the treatment the three comparators received. Thus, because Plaintiff has failed to show that she was treated less favorably than similarly situated employees who are outside of her protected groups, she has failed to make a *prima facie* showing of race or age discrimination and her claims fail as a matter of law.

Having found that Plaintiff has not established her *prima facie* case that she was subject to adverse employment actions because of her race or age, the Court need not address Defendant's contention that it has proffered a non-discriminatory reason for the adverse employment action and that the plaintiff has presented no evidence that the nondiscriminatory reason was a pretext. Accordingly, Plaintiff's race and age discrimination claims fail as a matter of law and summary judgment in Defendant's favor is warranted.

## IV. CONCLUSION

Accordingly, for the reasons outlined above:

1) Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED**.

2) The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

Date: 3/15/19

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge